UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANNELLE FOSTER, | No. 2: 15-cv-1774 KJN P |
| Petitioner, | |
| v. | ORDER |
| D.K. JOHNSON, Warden, | |
| Respondent. | |

I. Introduction

Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both parties have consented to the jurisdiction of the undersigned. (ECF Nos. 9, 10.)

Petitioner challenges her 2014 conviction for second degree robbery with great bodily injury and prior prison term enhancements. Petitioner is serving a sentence of 9 years. Petitioner raises one claim: the trial court wrongly denied her motion to substitute counsel. After carefully reviewing the record, the undersigned orders the petition denied.

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or

1

application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

////

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

3

considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784. This court "must determine what arguments or theories . . .

4

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

III. Discussion

In her opening brief, filed in the California Court of Appeal, and petition for review, filed in the California Supreme Court, petitioner argued that the denial of her Marsden[2] motion violated state law and her federal constitutional right to counsel. (Respondent's Lodged Documents 1, 4.) The California Court of Appeal issued a reasoned decision, but did not address petitioner's federal claim. (See ECF No. 13-1.) The California Supreme Court summarily denied petitioner's petition for review. (See ECF No. 13-2.)

Because petitioner raised her federal claim in state court, although it was not expressly addressed by the state courts, the undersigned presumes, subject to rebuttal, that this claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

A. Opinion of California Court of Appeal

Although the California Court of Appeal did not address petitioner's federal claim, the undersigned sets forth herein the state appellate court's opinion denying petitioner's related state law claim:

> On March 22, 2013, defendant was charged by information with three counts as follows: (1) assault with a deadly weapon (Pen.Code, § 245, subd. (a)(1) — count 1); [Footnote omitted] (2) second degree robbery (§ 211 — count 2); and (3) dissuasion of a witness by force or by an express or implied threat of force or violence (§ 136.1, subd. (c)(1) — count 3). With respect to count 1,

---

[2] People v. Marsden, 2 Cal.3d 118 (1970).

5

the information alleged that defendant personally inflicted great bodily injury on the victim. (§ 12022.7, subd. (a).) The information further alleged that defendant had been previously convicted of assault with a deadly weapon (§ 245, subd. (a)(1)) and served a prior prison term within the meaning of section 667.5, subdivision (b).

The parties entered into a plea agreement on November 13, 2013, less than a week before the scheduled trial date. As part of the plea agreement, the People made an unopposed motion to amend the information to add a great bodily injury enhancement (§ 12022.7, subd. (a)) to count 2. Defendant then entered a plea of no contest to the second degree robbery charge (§ 211), admitted the great bodily injury enhancement (§ 12022.7, subd. (a)), and admitted the prior prison term (§ 667.5, subd. (b)). In exchange for her plea, the remaining counts would be dismissed and defendant would receive a stipulated sentence of nine years in state prison.

The parties' plea agreement was memorialized in a document entitled, "Plea Form—Felony (With Explanations & Waiver of Rights)." The first page of the plea form indicates that defendant's "Aggregate Maximum Time of Imprisonment" will be "9 (@ 85%)." The second page of the preprinted form indicates that defendant will be sentenced to nine years in state prison and includes the handwritten notation "85%." Defendant signed the plea form, and initialed the appropriate boxes, acknowledging that she understood she would be sentenced to nine years at 85 percent time.

The trial court accepted defendant's plea and admissions, and found that they were knowingly, intelligently, and voluntarily made.

Sentencing was set for January 13, 2014. Before the sentencing hearing began, defense counsel informed the trial court that defendant was considering a motion to withdraw her plea. In addition, defense counsel said, defendant had raised a "Marsdenish issue" that should be decided before proceeding with the possible motion to withdraw the plea. At defense counsel's request, the trial court cleared the courtroom and conducted a hearing pursuant to People v. Marsden (1970) 2 Cal.3d 118 (Marsden).

During the Marsden hearing, the trial court asked defendant to describe the reasons for her dissatisfaction with appointed counsel. Defendant responded: "I feel my case is—wasn't looked into like it—like it should have been." When asked to elaborate, defendant explained: "I don't know how to say it. Maybe like it wasn't investigated enough." In particular, defendant suggested that other, unidentified witnesses should have been interviewed. In addition, defendant opined that the victim's injuries were inconsistent with the weapon alleged to have been used.

In response, defense counsel explained that the case was "investigated thoroughly" by a private investigator used by defense counsel since 2011. Defense counsel indicated that various witnesses had been interviewed, including defendant, a codefendant, and the victim. Defense counsel also indicated that he

consulted with a defense expert on the question whether the victim's injuries were consistent with the weapon alleged to have been used. Defense counsel noted, however, that defendant had previously indicated that she felt pressured or coerced into accepting the plea. Defense counsel urged the trial court to focus the inquiry on the issue of coercion.

Before turning to the issue of coercion, the trial court asked defense counsel to outline his background and experience as a criminal defense attorney. Defense counsel responded that he has been an active member of the criminal defense bar since 1996, having handled "thousands of jury trials and court trials," including death penalty cases.

The trial court then asked defense counsel to describe the circumstances leading to defendant's plea. Defense counsel explained that the prosecution originally offered nine years but took the offer off the table as the case proceeded to trial. The next series of offers had been in the 12– to 13–year range. Defense counsel said that defendant called to say she wanted to accept the original nine-year offer during the week-long interval between the pretrial conference and the trial readiness conference. Defense counsel convinced the prosecution to resurrect the original offer and arranged to have the case added to the trial court's calendar so that defendant's plea could be entered.

The trial court then turned to the question of coercion, and the following colloquy took place: "The Court: Ms. Foster, do you believe that you were coerced into entering a plea in this case?

"The Defendant: Yes, I do.

"The Court: Tell me why that is.

"The Defendant: For the fact that we had court two days before taking this plea, I got called in the office to sign it right now, go to court right now, take it right now, or it's off the table. I'm like, why don't we wait until the court date to do it? Why do it right now?

"The Court: Anything else regarding your statement that you believe that you were coerced?

"The Defendant: No, your Honor."

Defense counsel then clarified that the prosecution's original nine-year offer dated "back to the original filing or offer sheet prior to [the preliminary hearing,] which would have put it at ten months ago, nine months ago." The prosecution took the nine-year offer off the table after the preliminary hearing on March 15, 2013. The prosecution's subsequent offers "were in the double digits." The prosecution agreed to renew the original nine-year offer the week before trial but would only hold the offer open until the date of the trial readiness conference. "So that left us with days for [defendant] to consider."

7

The trial court then asked defense counsel and defendant whether either had anything else to say on the subject of coercion; each replied in the negative.

The trial court denied the motion, stating, "there is no basis that I can find that the case wasn't investigated or prepared.

"In terms of the coercion," the trial court continued, "there is pressure to settle a case in any case, and the pressure comes from the standpoint that there is time. If you wait until the date of trial, nobody is going to settle a case." The trial court then observed: "What I've heard today is that [defense counsel] was able to resurrect the nine-year offer, did get the district attorney to agree that they would accept that offer, that is indeed what you wanted to do, and in terms of the timing, which is where the pressure may have been to get it done that day or the next day, that was [defense counsel's] effort to make that nine-year offer happen. It wasn't going to happen on the trial readiness conference date. It had to happen on a day when court was in session with a court reporter available.

"And, let's see, November 13th of 2013, was a Wednesday calendar. The trial readiness conference would have been Friday the 15th. Jury trial was set for November 19th. It was—the 13th was the only day it could get done. In fact, it was the last day to get it done. So I can't make any finding that you were coerced into accepting a deal that you did not want to do. Moreover, I was the judge who took the plea. I have a plea form in front of me indicating that in fact was the deal that you wanted to accept." Accordingly, the trial court concluded, "the Marsden motion is denied on each basis, lack of preparation and the coercion."

After the trial court denied the motion, defendant asked to be heard, stating: "I was signing with nine with half and not nine with 85 percent." Defense counsel explained that the parties discussed the possibility of a stipulated sentence of nine years at 50 percent, but the prosecution insisted on nine years at 85 percent. Accordingly, the trial court concluded, "[t]o the extent that—that argument is made as part of the Marsden hearing, I am denying the Marsden motion on that basis as well."

On February 3, 2014, defense counsel informed the trial court that defendant was withdrawing her request to file a motion to withdraw her plea. The trial court confirmed that defendant wanted to withdraw her motion to withdraw her plea. As the trial court was preparing to sentence defendant, an unidentified person interrupted, stating, "The robbery charge was mine and I admitted to it." Moments later, the unidentified speaker was removed from the courtroom and defendant was sentenced according to her plea agreement.

On February 24, 2014, defendant filed a timely notice of appeal, requesting a certificate of probable cause on the grounds that she was innocent of the charges against her, did not have enough time to consider her plea, and was led to believe that she would be

8

receiving nine years at 50 percent time, rather than nine years at 85 percent time. The trial court denied the certificate of probable cause.

DISCUSSION

On appeal, defendant contends the trial court abused its discretion in denying her <u>Marsden</u> motion because defense counsel coerced her into accepting the plea agreement, thereby creating an irreconcilable conflict such that ineffective representation was likely to result. Defendant also contends that her relationship with defense counsel was irretrievably broken down as a result of defense counsel's alleged coercion, inadequate investigation, and a misrepresentation concerning the terms of the plea agreement. We conclude that defendant's claims lack merit.

At the outset, we reject the People's contention that defendant's appeal must be dismissed because she did not obtain a certificate of probable cause. "A determination that defendant is entitled to substitute counsel has no necessary implication for his no contest plea, which plea stands until a motion to withdraw it is made and granted." (<u>People v. Vera</u> (2004) 122 Cal.App.4th 970, 978.) Consequently, defendant "was not required to obtain a certificate of probable cause to challenge the trial court's denial of defendant's postplea <u>Marsden</u> motion," even though defendant's complaints pertain to her counsel's preplea conduct. (<u>Vera</u>, at p. 978.)

Turning to the merits, we have reviewed the record and find no error. A defendant is entitled to new appointed counsel if the record clearly shows the first appointed attorney is not providing adequate representation or there is such an irreconcilable conflict between defendant and counsel that ineffective representation is likely to result. (<u>People v. Valdez</u> (2004) 32 Cal.4th 73, 95.) When a defendant requests substitution of counsel, the trial court must conduct an informal hearing at which the defendant is permitted to explain his or her complaints. (<u>Id.</u> at pp. 95–96.) Complaints about the way in which the defendant relates to counsel do not alone show incompetence. (<u>Id.</u> at p. 96.) Similarly, mere tactical disagreements between the defendant and counsel do not constitute an irreconcilable conflict. (<u>Id.</u> at p. 95.) "'A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense.'" (<u>Ibid.</u>)

We review the denial of a <u>Marsden</u> motion for abuse of discretion. (<u>People v. Jones</u> (2003) 29 Cal.4th 1229, 1245 (<u>Jones</u>); see <u>People v. Smith</u> (1993) 6 Cal.4th 684, 695 (<u>Smith</u>).) "'Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.' [Citations.]" (<u>People v. Hart</u> (1999) 20 Cal.4th 546, 603.)

The record shows no abuse of discretion. The trial court thoroughly explored the reasons for defendant's dissatisfaction with appointed counsel, giving her several opportunities to articulate her concerns. When defendant expressed doubts about the adequacy of defense

9

counsel's pretrial investigation, the trial court pressed for details, asking which witnesses should have been interviewed and which avenues of investigation pursued. Defendant was unable to identify any particular respect in which defense counsel failed to investigate the case. Even so, the trial court carefully questioned defense counsel and determined that the investigation was adequate. We have reviewed the record and find nothing that would undermine the trial court's conclusion.

The trial court also carefully considered defendant's claim that she was coerced. Defendant said that she felt coerced into accepting the plea because she was told to "sign it right now, go to court right now, take it right now, or it's off the table." However, defense counsel explained that the prosecution was willing to hold the nine-year offer open only until the date of the trial readiness conference. The trial court was entitled to accept defense counsel's explanation (Smith, supra, 6 Cal.4th at p. 696) and reasonably concluded that defendant accepted the offer on the last possible date, given the court's schedule and the upcoming trial date.

We find further support for the trial court's conclusion in the fact that defendant contacted defense counsel to accept the offer, and not the other way around. Although defendant may have experienced some pressure to accept the offer, there is nothing in the record to suggest that defense counsel was the source of any such pressure. Furthermore, the record indicates that defendant accepted an offer that was originally discussed before the preliminary hearing, many months earlier. Thus, the record suggests that defendant had adequate time to consider the offer, despite the rush to enter the plea before the trial readiness conference. Accordingly, we find no abuse of discretion in the trial court's conclusion that defendant's plea was not coerced.

Defendant contends the trial court erred in denying her Marsden motion in light of her contemplated motion to withdraw her plea. She argues that an irreconcilable conflict of interest existed because "the basis for the motion to withdraw her plea was, in fact, the direct actions of [defense counsel] and whether he had provided effective assistance or unduly coerced her into taking a deal she did not want to accept." We reject defendant's contention for several reasons.

First, defendant never filed a motion to withdraw her plea. As a result, there was no need for defense counsel to argue for his own incompetence, and no conflict of interest materialized.

Second, the trial court reasonably rejected the factual premise for defendant's contention that she and defense counsel were embroiled in an irreconcilable conflict of interest. According to defendant, an irreconcilable conflict arose from the fact that defense counsel allegedly coerced her plea and would need to acknowledge the coercion to effectively argue a motion to withdraw the plea. However, the trial court flatly rejected the underlying contention that defense counsel coerced defendant's plea. Under the circumstances, defendant has failed to demonstrate that she was

10

embroiled in an irreconcilable conflict of interest with defense counsel such that ineffective representation was likely to result.

Third, a motion to withdraw a plea does not necessarily require the appointment of substitute counsel. Our Supreme Court has recognized that a defense attorney is placed in an awkward position and "[t]he potential for conflict is obvious" when a defendant claims after trial or a guilty plea that counsel was ineffective. (Smith, supra, 6 Cal.4th at p. 694.) However, while acknowledging that "it is difficult for counsel to argue his or her own incompetence" (ibid.), the Supreme Court has concluded that it is not impossible for counsel to do so (People v. Sanchez (2011) 53 Cal.4th 80, 89). [Footnote 3.] Thus, even a motion requiring an attorney to argue his or her own incompetence does not automatically require appointment of substitute counsel. Here, the trial court impliedly found that defendant's contemplated motion to withdraw her plea would not give rise to an irreconcilable conflict of interest. We find no abuse of discretion in the trial court's conclusion.

> [Footnote 3: The Supreme Court has also recognized the undesirable consequences resulting from the appointment of substitute counsel without an adequate showing, for the purpose of arguing that previous counsel was incompetent. In People v. Makabali (1993) 14 Cal.App.4th 847, for example, the trial court appointed second counsel to investigate a possible motion to withdraw a guilty plea on the basis of ineffective assistance of counsel. New counsel did not make the motion. On appeal, appointed counsel, defendant's third attorney, claimed that the second was incompetent for not claiming the first was incompetent. Addressing these types of situations, the court in Smith, supra, 6 Cal.4th at page 695, stated: "The spectacles of a series of attorneys appointed at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent discredits the legal profession and judicial system, often with little benefit in protecting a defendant's legitimate interests."]

Next, defendant contends that the trial court erred in denying her Marsden motion because defense counsel's alleged incompetence resulted in a "breakdown of the attorney-client relationship." Once again, we reject defendant's contention.

Defendant contends her relationship with defense counsel was irretrievably broken down because she no longer trusted him. Defendant did not say anything about a breakdown in her relationship with defense counsel during the Marsden hearing. She did not complain at the hearing that she no longer trusted defense counsel or otherwise indicate that the relationship was impaired, much less irretrievably so.

In the absence of any such discussion in the trial court, defendant now contends that she lost trust in defense counsel because he

11

failed to adequately investigate her case, coerced her plea, and misrepresented the terms of her plea agreement. As discussed, the trial court reasonably rejected defendant's contention that defense counsel failed to investigate her case and coerced defendant's plea. The trial court also rejected defendant's contention that defense counsel misrepresented the terms of the plea agreement. We have reviewed the record and conclude that the trial court's determination that defense counsel did not misrepresent the terms of the plea agreement was supported by substantial evidence.

During the Marsden hearing, defendant suggested that defense counsel led her to believe she would be sentenced to nine years at 50 percent time. Defense counsel responded that while the parties discussed the possibility that defendant might be sentenced to nine years at 50 percent time, they ultimately agreed to nine years at 85 percent time. There is nothing in the record to suggest that defense counsel misrepresented the terms of the plea agreement. To the contrary, the plea agreement clearly stated that defendant's "Aggregate Maximum Time of Imprisonment" would be "9 (@ 85%)." Defendant signed the plea form, acknowledging that she understood she would be sentenced to nine years at 85 percent time. The trial court conducted an adequate inquiry into the basis for defendant's contention that defense counsel misrepresented the terms of the plea agreement and reasonably rejected the claim. We perceive no abuse of discretion.

Furthermore, there was no abuse of discretion in the trial court's implied finding that defendant's loss of confidence in defense counsel did not necessitate the appointment of substitute counsel. "Defendant's mere allegation that he did not trust his defense attorney, without more, was insufficient to compel the trial court to replace him. 'If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law.' [Citation.]" (People v. Abilez (2007) 41 Cal.4th 472, 489.)

The trial court gave defendant an opportunity to explain the reasons for each of these complaints and permitted counsel to respond. Defense counsel had adequate explanations for each grievance, and " '[t]o the extent there was a credibility question between defendant and counsel at the hearing, the court was "entitled to accept counsel's explanation." [Citation.]' [Citation.]" (Jones, supra, 29 Cal.4th at pp. 1245–1246.) Accordingly, we conclude the trial court conducted an adequate Marsden hearing and did not abuse its discretion in denying the motion.

(People v. Foster, 2015 WL 1156769 at *1-6 (2015).

////

////

12

B. Legal Standard

Denial of a motion pursuant to People v. Marsden may implicate the Sixth Amendment right to counsel. Schell v. Witek, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc); Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled in part on other grounds in Schell, 218 F.3d at 1025-26; Hudson v. Rushen, 686 F.2d 826, 828-29 (9th Cir. 1982). Therefore, when a criminal defendant makes a request for substitution of counsel, the trial court is constitutionally required to inquire into the defendant's reasons for wanting a new attorney. Schell, 218 F.3d at 1025 ("[I]t is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward."); see also Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007) ("A trial court's inquiry regarding counsel's performance on a motion to substitute counsel should be such necessary inquiry as might ease the defendant's dissatisfaction, distrust and concern.") (citation and internal quotation marks omitted); Bland, 20 F.3d at 1476-77.

For an indigent defendant, such an inquiry can serve to protect against constitutional injury because the failure to provide substitute counsel "may result in a denial of the constitutional right to effective assistance of counsel if the defendant and his attorney are embroiled in an 'irreconcilable conflict.'" United States v. Mills, 597 F.2d 693, 700 (9th Cir. 1979) (quoting Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970) ("[T]o compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever")).

In reviewing a federal habeas claim based on the denial of a substitution motion, "the ultimate constitutional question the federal courts must answer" is whether the state trial court's disposition of the motion violated a petitioner's constitutional rights because the conflict between the petitioner and appointed counsel "had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell, 218 F.3d at 1026. If the reviewing court determines that a conflict developed between the petitioner and appointed

counsel so serious that it "resulted in the constructive denial of assistance of counsel, no further showing of prejudice is required." Schell, 218 F.3d at 1027-28 (citing Strickland, 466 U.S. at 692).

On the other hand, "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." Schell, 218 F.3d at 1027 (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1983) (holding that the Sixth Amendment does not guarantee a "meaningful relationship" between defendant and counsel)); see also Stenson, 504 F.3d at 886 ("An irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel. Disagreements over strategic or tactical decisions do not rise to [the] level of a complete breakdown in communication." (citing Schell, 281 F.3d at 1026)).

As explained by the Ninth Circuit:

> The test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed. The court must consider: (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel.

Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

C. Analysis

In the instant case, respondent filed, under seal, a copy of the transcript from petitioner's Marsden hearing. (ECF No. 17.) Petitioner attached a copy of this transcript to the petition. (ECF No. 1 at 34-46.) After independently reviewing the transcript from the Marsden hearing, with one exception discussed herein, the undersigned finds that the opinion of the California Court of Appeal accurately summarizes this transcript.

Turning to the merits of the instant claim, the timeliness of petitioner's motion to substitute counsel is not at issue. Accordingly, the undersigned focuses on the extent of the conflict between petitioner and her counsel and the trial judge's inquiry.

////
////

*Trial Court's Inquiry*

As discussed herein, the record reflects that the trial court made full and appropriate inquiries into petitioner's complaints against defense counsel. The trial court first asked petitioner to explain why she made the Marsden motion. (ECF No. 17 at 2.) Petitioner initially told the court that she made the motion because her case was not "looked into…like it should have been." (Id.) After discussing this issue with petitioner and trial counsel, trial counsel told the court that petitioner initially told him that she wanted to file a Marsden motion for a different reason, which was that counsel had coerced or pressured her into taking a plea. (Id. at 4.) The trial court talked to petitioner and trial counsel regarding her claim of coercion. (Id. at 6-10.) The trial court also discussed with petitioner her claim that she thought her plea agreement was for 9 years with 50% time, but that the plea agreement she signed was for 9 years with 85% time. (Id. at 12-14.)

With respect to petitioner's claim that trial counsel had not adequately investigated the case, trial counsel explained the witnesses his investigator interviewed as well as the evidence that had been reviewed before petitioner entered her plea. (Id. at 3-5.) Trial counsel described his experience. (Id. at 5-6.) Trial counsel stated that he had been using his private investigator since 2011. (Id. at 5-6.) While petitioner stated that she wanted further investigation done regarding the weapon involved, trial counsel stated that investigation had been conducted regarding the weapon. (Id. at 3-4.) Petitioner stated that more witnesses should have been interviewed. (Id. at 3.) After the trial court asked her which witness should have been talked to, petitioner responded, "Maybe the people at the scene other than just the victim and her sons." (Id.) Trial counsel responded that every witness made available in the discovery or told to him and his investigator by petitioner was interviewed. (Id. at 3-4.) The trial court found that there was no basis to petitioner's complaints that her case was not adequately investigated or prepared. (Id. at 10.)

After trial counsel told the trial court that petitioner had informed him that she felt that he had pressured her into taking the plea, the trial court asked trial counsel to explain what happened regarding the 9 year offer. (Id. at 7-10.) Trial counsel explained that the 9 year offer was

15

available for a short period of time, and that petitioner contacted his office because she wanted to accept it. (Id.) After describing the sequence of events that led petitioner to plead guilty, the trial court found that petitioner was not coerced into accepting a deal she did not want. (Id. at 10-12.) The trial court observed that petitioner's trial counsel was able to "resurrect" the original nine year offer, but that this offer had to be accepted prior to the trial readiness conference date. (Id. at 11.)

The California Court of Appeal found that during the week long interval between the pretrial conference and the trial readiness conference, petitioner called defense counsel to say that she wanted to accept the original nine year offer. The California Court of Appeal then found that trial counsel convinced the prosecution to resurrect the original offer and arranged for the case to be added to the trial court's calendar so that the plea could be entered. The transcript from the Marsden hearing suggests that the district attorney reverted to the nine year offer at the last minute, rather than defense counsel negotiating for resurrection of the offer at petitioner's request:

> Trial counsel: Correct. So the next series of offers were in the double digits. They were ten years and odd months. But everything came up to an arrangement of a 12-year, three-month offer. Rather than risking the maximum at trial, and that was in place for quite a while, that situation was in place up to the pretrial conference date immediately before trial readiness, and then an offer was finally made by the D.A. to revert to the nine year offer, but it was not going to be in place on the trial readiness calendar point blank on that date.
>
> So that left us with days for Ms. Foster to consider. And it was then she contacted our office that we add it back on calendar. I thought it was a wise move. I still do. Submitted.
>
> Court: When she contacted your office, what did she contact your office about?
>
> Trial Counsel: The offer. There was no other reason to do it. The question is, is this offer – is this offer going to be gone. The answer was yes. The offer has been put in place if we do this prior to trial readiness calendar, and that's why it needed to be added on.

(Id. at 9-10.)

The trial court also asked trial counsel whether he told petitioner that the offer was for 9 years, 50% time. (Id. at 13-15.) Trial counsel told the court that while 50% had been discussed,

1 | he advised petitioner that the offer was for 85%. (Id.)

2 | After reviewing the transcript from the Marsden hearing, the undersigned finds that the factual record was sufficiently developed to allow the trial court to make an informed decision that petitioner's claim of conflict with his attorney was not sufficient to require substitute counsel. See United States v. Prime, 431 F.3d 1147, 1155 (9th Cir. 2005) (inquiry was adequate where defendant "was given the opportunity to express whatever concerns he had, and the court inquired as to [defense attorney's] commitment to the case and his perspective on the degree of communication."). The trial court thoroughly discussed with petitioner, and trial counsel, the grounds of her motion for substitute counsel.

*Extent of Conflict Between Petitioner and Defense Counsel*

The undersigned next finds that the conflict between petitioner and her trial counsel did not result in a total lack of communication or other significant impediment that resulted in an attorney-client relationship that violated petitioner's Sixth Amendment rights. Schell, 218 F.3d at 1026. Although petitioner alleged in her appeal, and in the instant habeas petition, that her relationship with trial counsel had "irretrievably broken down," the record does not support this claim. An irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel. Schell, 218 F.3d at 1026. Disagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication. Id.

The disagreements petitioner alleged with her trial counsel during the Marsden hearing did not demonstrate a complete breakdown in communication that prevented effective assistance of counsel. Trial counsel's description of his investigation rebutted petitioner's claim that he had not adequately investigated her case. While petitioner indicated that she felt pressured to take the 9 year deal, the record demonstrates that the "resurrected" offer was available for only a short period of time, as are many plea offers.[3] In addition, the 9 year offer had been offered earlier

---

[3] Whether trial counsel or the district attorney "resurrected" the offer is not important to the court's evaluation of the instant claim.

during the case. The record contained no evidence of improper pressure or coercion by defense counsel that resulted in a complete breakdown of in communication. Finally, the record demonstrates that counsel did not misrepresent the terms of the plea to petitioner.

Petitioner also argues that the trial court should have granted her <u>Marsden</u> motion based on her contemplated motion to withdraw her plea based on trial counsel's alleged failure to investigate her case and coercion. As noted by the California Court of Appeal, petitioner's failure to file a motion to withdraw her plea undermines this claim. Moreover, as noted by the California Court of Appeal, the trial court reasonably rejected the factual premise for petitioner's complaints against trial counsel.

For the reasons discussed above, the undersigned finds that the denial of petitioner's Sixth Amendment claim by the state courts was not an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a petition for writ of habeas corpus is denied;

2. A certificate of appealability is not issued.

Dated: September 28, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Fos1774,157